IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

CAROLYN SANDERS,                      *

    Plaintiff,                    *

vs.                                   *     CASE NO. 3:08-CV-03(CDL)

UNUM LIFE INSURANCE COMPANY OF        *
AMERICA, d/b/a Unumprovident,
                                      *
    Defendant.                    
                                      *
_____      *

O R D E R

    This action arises from Defendant Unum Life Insurance Company of America's ("Unum") denial of Plaintiff Carolyn Sanders's long term disability benefits.  Plaintiff contends that Defendant, operating under a conflict of interest, arbitrarily terminated her long-term disability benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*  Defendant responds that its initial benefits-denial decision, as well as its benefits-denial decision on appeal, were right, but that even if they were *de novo* wrong, they were nonetheless reasonable under the arbitrary and capricious standard.  Presently pending before the Court is Defendant's Motion for Judgment on the Administrative Record (Doc. 11).[1]  For the following reasons, the Court decides this case

_____

    [1]Defendant files its motion pursuant to Federal Rule of Civil Procedure 52(a), which provides, in pertinent part, that

        [i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately.  The findings and

in favor of Defendant with the following Findings of Fact and
Conclusions of Law.

FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

## I.   Findings of Fact

### A.   The Policy

Plaintiff was insured under a Group Long Term Disability
Insurance Policy ("Policy") maintained by her former employer,
AutoZone Parts, Inc. ("AutoZone"). (Absher Aff. ¶ 7, Nov. 19, 2008.)
The Policy defined all full-time hourly employees, excluding
management trainees, as disabled if they were **"limited** from
performing the **material and substantial duties** of [their] **regular**
**occupation** due to [their] **sickness** or **injury**[,]" and they had "a 20%
or more loss in [their] **indexed monthly earnings** due to the same
sickness or injury." (Admin. R. UACL:51.) After twelve monthly
payments, an employee was considered disabled if "Unum determine[d]

---

conclusions may be stated on the record after the close of the
evidence or may appear in an opinion or a memorandum of
decision filed by the court.

Fed. R. Civ. P. 52(b); *see Doyle v. Liberty Life Assurance Co.*, 542 F.3d
1352, 1363 n.5 (11th Cir. 2008) (explaining that when a decision is based
on the agreed-upon administrative record, judicial economy favors using
findings of fact and conclusions of law, not Federal Rule of Civil
Procedure 56, to avoid an unnecessary step that could result in two
appeals rather than one); *see also Chilton v. Savannah Foods & Indus.,*
*Inc.*, 814 F.2d 620, 623 (11th Cir. 1987) (per curiam) (noting that the
Court, and not a jury, is the proper factfinder in an ERISA case).

[2]The Court bases its Findings of Fact and Conclusions of Law on the
administrative record that was available to the plan administrator when
it made its decision to deny benefits. *See Glazer v. Reliance Standard*
*Life Ins. Co.,* 524 F.3d 1241, 1246 (11th Cir. 2008); *see also Jett v. Blue*
*Cross and Blue Shield of Ala., Inc.,* 890 F.2d 1137, 1140 (11th Cir. 1989).

that due to the same sickness or injury, [the employee] [was] unable to perform the duties of any **gainful occupation** for which [the employee] [was] reasonably fitted by education, training or experience." (*Id.*) Under the Policy, gainful occupation was defined as the following:

> an occupation that is or can be expected to provide [an employee] with an income within 12 months of [the employee's] return to work, that exceeds:
>
> 80% of [the employee's] indexed monthly earnings, if [the employee] [was] working; or
> 60% of [the employee's] indexed monthly earnings, if [the employee] [was] not working.

(*Id.* at UACL:73.)

When making a benefit determination under the Policy, Defendant had the "discretionary authority to determine [an employee's] eligibility for benefits and to interpret the terms and provisions of the policy." (*Id.* at UACL:46.)  Furthermore,

> [i]n exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of [an employee's] claim by the Plan.  Benefits under this Plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them.

(*Id.* at UACL:72.)

### B.   Plaintiff's Initial Claim for Benefits

Plaintiff, a high school educated female, worked as an inventory control specialist for Autozone. (*See, e.g., id.* at UAMS:10; *see id.* at UACL:450.)  Plaintiff's occupational duties included keeping

3

updated and accurate inventory, as well as performing "tasks as directed and assigned by management." (*Id.* at UACL:365.)  Plaintiff's position required her to either walk or stand approximately "90%" of each workday.  (*Id.* at UACL:366.)

On September 6, 2005, Plaintiff was diagnosed with a meniscus tear of the left knee and could not perform her work duties.  Dr. Larry Bowman, an orthopedic surgeon and Plaintiff's attending physician, performed surgery on Plaintiff's meniscus tear on September 26, 2005.  (*See, e.g., id.* at UACL:13, 95, 191.)  In October 2005, Plaintiff began suffering from shoulder pain, bursitis in her left knee and right proximal medial tibial bursitis in her right knee, and fluid in her knees.  (*See, e.g., id.* at UACL:30, 93, 149, 183, 314.)  Plaintiff applied for short-term disability benefits and Defendant approved Plaintiff's claim on October 4, 2005. (*Id.* at UAMS:30.)  Dr. Bowman completed an Attending Physician Statement on November 17, 2005, which provided that Plaintiff, due to continued pain in lifting her leg and difficulty with range of motion, would be out of work for at least a "month or two."  (*Id.* at UAMS:83-84.) Defendant subsequently approved Plaintiff's short-term disability claim through December 5, 2005.  (*Id.* at UAMS:87.)

On December 22, 2005, Defendant approved Plaintiff's claim for long-term disability benefits from December 6, 2005 to January 4, 2006.  (*Id.* at UACL:156-59.)  Dr. Bowman completed an Attending Physician Statement on February 6, 2006, which provided that

4

Plaintiff could not lift any weight, perform fine finger movements, push or pull, or perform hand-eye coordinated movements.  Dr. Bowman also stated that Plaintiff did not have the ability to sit, stand, or walk; in other words, Plaintiff was "completely out of work."  (*Id.* at UACL:218-19.)

On June 5, 2006, Dr. Bowman released Plaintiff to return back to work. Plaintiff returned to work full time on June 6, 2006, and thus, Defendant closed Plaintiff's claim for long-term disability benefits. (*Id.* at UACL:293-94.)  However, on October 6, 2006, Plaintiff left work again due to increased knee pain, persistent back pain, and increased shoulder pain.  Dr. Bowman diagnosed Plaintiff with a degenerative joint disease of the knees, lower back pain with radiculopathy post epidural injection, and an impingement syndrome of the left shoulder.  (*Id.* at UACL:331.)  Dr. Bowman opined that Plaintiff could not sit, walk, or lift any weight for any amount of time, and that given her restrictions and limitations, she would not be able to return to work in another occupation.  (*Id.* at UACL:381-82.)  As a result of Plaintiff's continued disability, Plaintiff's long-term disability claim was reopened.  On November 2, 2006, Defendant approved Plaintiff's request for long-term disability benefits, noting Plaintiff's "recurrence of [her] prior condition."[3]

---

[3]Under Plaintiff's Policy, a recurrent disability was defined as a disability which was "caused by a worsening in [the employee's] condition" that was "due to the same cause(s) as [the employee's] prior disability for which Unum made a Long Term Disability payment."  (Admin. R. UACL:76.)

(*Id.* at UACL:394-97.)  Because Plaintiff would have received twelve months of long-term disability benefits under the "regular occupation" provision of the Policy by December 4, 2006, Defendant began evaluating Plaintiff's eligibility for benefits beyond the twelve months to determine whether Plaintiff was disabled from performing any "gainful occupation."  (*Id.* at UACL:249-51.)

        1.   *Defendant's Medical Evaluations*

On October 27, 2006, Karen Hughes, a registered nurse, reviewed Plaintiff's medical file and opined that Dr. Bowman's opinion that Plaintiff lacked the ability to sit, stand, or walk was "completely overly restrictive."  (*Id.* at UACL:384.)  Dr. George Seiters, one of Defendant's board certified orthopedic surgeons, performed a comprehensive orthopedic review of Plaintiff's file for Defendant on November 7, 2006.  (*Id.* at UACL:404-09.)  Dr. Seiters opined that Plaintiff had "at least full-time sedentary capacity and possibly light capacity with no repetitive squatting/kneeling/ladder climbing and no greater than frequent standing/walking/stair climbing."  (*Id.* at UACL:406.)  Dr. Seiters further noted that although Plaintiff

---

If an employee had a recurrent disability, then Defendant would treat the disability as part of the employee's prior claim and the employee would not have to complete another elimination period if:

-    [the employee] [was] continuously insured under the plan for the period between [the employee's] prior claim and [the employee's] recurrent disability; and
-    [the employee's] recurrent disability occurs within 6 months of the end of [the employee's] prior claim.

(*Id.* at UACL:62.)

suffered from lumbar tenderness, back pain, and left shoulder pain, there was no documentation or imaging studies documenting functional loss consistent with her orthopedic restrictions and limitations.

On November 8, 2006, Dr. Seiters sent Dr. Bowman a clarification letter requesting Dr. Bowman's medical opinion as to whether Plaintiff could perform sedentary work notwithstanding her restrictions and limitations. (*Id.* at UACL:467-68.)  Dr. Bowman responded to the request on November 10, 2006, providing that Plaintiff would be "unable to do even infrequent standing, walking, [and] especially any significant stair climbing" and that Plaintiff's numerous attempts to return to work were unsuccessful due to her current restrictions and limitations. (*Id.* at UACL:467-68.)  After receiving Dr. Bowman's response, Dr. Seiters opined that

> while Dr. Bowman indicated disagreement with the degree of standing, walking and stair climbing capacity, he [had] not specifically disagreed with or provided a rationale for inability to sit full-time with accommodation for changing knee position as necessary as recommended . . . . Dr. Bowman noted previous unsuccessful attempts to return to work; however, the current question addresses ability to work in a less rigorous occupation and is not directly related to unsuccessful attempts to return to her previous work activity.

(*Id.* at UACL:472.)  Thus, Dr. Seiters's medical opinion regarding Plaintiff's ability to perform sedentary work did not change after reviewing Dr. Bowman's response.  On December 1, 2006, Dr. Richard Tyler, another board certified orthopedic surgeon, reviewed Plaintiff's file and issued a report to Defendant. (*Id.* at UACL:436-46.)  Dr. Tyler noted that Plaintiff "would be able to sit full time

7

without any restrictions, but would need accommodation for changing knee position as necessary." (*Id.* at UACL:443.)

On February 13, 2007, Defendant received additional medical records dating as far back as August 2003 from Dr. Sreeroop Sen, Dr. Michael Bucci, Dr. Douglas Reeves, and Dr. David Shallcross. (*See, e.g., id.* at UACL:537-38, 539-40, 542-43, 554, 626-627.) Dr. Seiters reviewed these medical files, which provided that Plaintiff suffered from shoulder and lower back pain, and indicated an additional restriction and limitation of "no repetitive lumbar bending/twisting," but opined that this additional restriction and limitation would not prevent Plaintiff from performing sedentary work. (*Id.* at UACL:539-40, 557-60.)

     2.  *Defendant's Vocational Evaluations*

On December 4, 2006, Lady Jackson, one of Defendant's senior vocational rehabilitation consultants, performed a vocational assessment. (*Id.* at UACL:450-52.) Jackson opined, after reviewing Plaintiff's prior work history, skills, high school education, training, demonstrated general educational development levels, and gainful wage of $8.14 per hour, that Plaintiff was capable of performing three alternative jobs—wire transfer clerk, credit card clerk, and vehicle maintenance scheduler. (*Id.* at UACL:451-52.) Jackson noted that Plaintiff "should be capable to prop foot if needed in these sedentary positions as well as take the naturally allotted breaks every few hours and at lunch." (*Id.* at UACL:450.)

On February 21, 2007, Paulette Lemaire, another senior vocational rehabilitation consultant, performed an additional vocational assessment of Plaintiff. (*Id.* at UACL:570-71.)  Lemaire took into account Plaintiff's "additional restriction and limitation of no repetitive stooping, bending or twisting of the back," and opined that this restriction and limitation "would not preclude the performance of any one of the occupations identified on the previous [vocational assessment]." (*Id.* at UACL:571.)  Thus, the occupations of wire transfer clerk, credit card clerk, and vehicle maintenance scheduler "remain[ed] appropriate and gainful." (*Id.*)

C.   Plaintiff's Appeal of Defendant's Initial Benefits-Denial Decision

After reviewing the medical and vocational evaluations, Defendant advised Plaintiff on February 22, 2007 that her long-term disability benefits were not payable beyond March 30, 2007. (*Id.* at UACL:579-84.)[4]  Defendant noted that because Plaintiff was "gainfully employable based on the restrictions and limitations supported by [Defendant's] review of the medical documentation in [Plaintiff's file], [Defendant] [was] not able to support that [Plaintiff] [was] unable to perform the duties of any gainful occupation for which [she] [was] reasonably fitted by education, training or experience." (*Id.* at UACL:582.)

---

[4]Plaintiff applied for Social Security benefits in January 2007. (Admin. R. UACL:614.)  However, Plaintiff's claim for Social Security benefits was denied on February 28, 2007. (*Id.* at UACL:623.)

Plaintiff subsequently appealed Defendant's denial of her long-term disability benefits and Defendant began reevaluating Plaintiff's medical records on February 23, 2007. (*See, e.g., id.* at UACL:626-29, 660, 666-68, 722-23, 724-28, 762, 769-72.) On February 28, 2007, Plaintiff communicated with Defendant via telephone, expressing concern over the denial of her long-term disability benefits. Defendant, after explaining the Policy's definition of disability to Plaintiff, reminded Plaintiff that her medical condition should not prevent her from doing sedentary work, considering she admitted that she "did fair" when she performed sedentary work at AutoZone. (*See, e.g., id.* at UACL:628.)

1.   *Defendant's Medical Evaluations on Appeal*

Dr. Bowman referred Plaintiff to Dr. Geneva Hill, a rheumatologist, for a medical consultation and physical examination. On March 6, 2007, Dr. Hill examined Plaintiff (*id.* at UACL:680-82), and based on the examination, Dr. Hill assessed that Plaintiff would be unable "to work at a job requiring lots of standing and walking," but opined that "[s]edentary work should be okay." (*Id.* at UACL:682.) On March 8, 2007, Susan Grover, a registered nurse, reviewed Plaintiff's medical records, including the treatment files provided by Dr. Bucci, Dr. Shallcross, Dr. Reeves, Dr. Sen, and Dr. Bowman. (*Id.* at UACL:626-29.) After reviewing the files, Grover opined that Plaintiff "should be able to perform sedentary work capacity as long as she [did] not have to do frequent

walking/standing or repetitive kneeling/squatting/crawling/climbing." (*Id.* at UACL:629.)  Grover further noted that "[s]itting should not be a problem as long as [Plaintiff] [could] change positions every 20-30 minutes as needed." (*Id.*)

On March 23, 2007, Dr. Joel Hoag, another board certified orthopedic surgeon, reviewed Plaintiff's medical file.  (*Id.* at UACL:664-68.)  Dr. Hoag provided that Plaintiff "would have at least sedentary capacity" with limitations of "no frequent standing or walking and no repetitive kneeling, squatting, crawling, or climbing." (*Id.* at UACL:668.)  Dr. Hoag also noted that Plaintiff must be able to sit "without restriction with accommodation for change of position as necessary, and no repetitive stooping, bending, or twisting of the back." (*Id.*)  On April 5, 2007, Dr. Hoag provided Defendant with a Medical Addendum Response.  (*Id.* at UACL:722-23.)  Dr. Hoag provided that "[i]t [was] reasonable and supported that [Plaintiff] would have at least sedentary capacity" but that there would be limitations of "no frequent standing or walking and no repetitive kneeling, squatting, crawling, or climbing." (*Id.* at UACL:723.)  After receiving additional medical files, Dr. Hoag submitted another Medical Addendum Response to Defendant on April 24, 2007.  (*Id.* at UACL:760-61.)  Dr. Hoag noted that Plaintiff's restrictions and limitations were consistent with Dr. Hill's opinion that Plaintiff could perform sedentary work, but would be unable to

perform work that required a lot of standing and walking.  (*Id.* at UACL:761.)

2.  *Defendant's Vocational Evaluation on Appeal*

Shannon O'Kelley, another senior vocational rehabilitation consultant, reviewed Dr. Hoag's reports and the previous vocational assessments.  After the review, O'Kelley determined that the previous occupations Defendant had identified for Plaintiff remained viable. (*Id.* at UACL:724-28.)  Furthermore, O'Kelley identified three additional vocational options suitable for Plaintiff given her present limitations and restrictions–telephone operator, telemarketer, and receptionist.  (*Id.* at UACL:727.)  On April 25, 2007, Defendant affirmed its decision to terminate Plaintiff's claim for long-term disability benefits based on the medical reviews and vocational assessments on appeal.  (*Id.* at UACL:769-72.)

**II.  Conclusions of Law**

A.  <u>ERISA Analytical Framework</u>

ERISA permits "a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008).  In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111-13 (1989), the Supreme Court addressed the appropriate standard of judicial review of benefit determinations.  As explained by the Court in *Firestone,* four principles should guide a court's review.  First, a court should be "guided by principles of trust law."  *Id.* at 111.  Second,

12

"[p]rinciples of trust law require courts to review a denial of plan benefits 'under a *de novo* standard' unless the plan provides to the contrary." *Glenn,* 128 S. Ct. at 2348 (quoting *Firestone*, 489 U.S. at 115). Third, "[w]here the plan provides to the contrary by granting the administrator . . . *discretionary authority* to determine eligibility for benefits, [t]rust principles make a *deferential standard* of review appropriate[.]"[5]  *Id.* (third alteration in original) (internal citation and quotation marks omitted). Fourth, "[i]f 'a benefit plan gives discretion to an administrator . . . who *is operating under a conflict of interest*, that conflict must be *weighed as a factor* in determining whether there is an abuse of discretion.'" *Id.* (quoting *Firestone*, 489 U.S. at 115).

Based on *Firestone* as clarified by *Glenn,* the Court must first determine whether the plan provides the plan administrator with discretion in administering the plan.  If it does not, the Court reviews the plan administrator's denial of benefits *de novo.*  *See Doyle*, 542 F.3d at 1355-56.  If the plan administrator is provided with discretion, then under trust principles, the plan administrator's denial of benefits is entitled to appropriate deference based upon whether the administrator abused his discretion

_____

[5]This deferential standard is an abuse of discretion standard which the Eleventh Circuit equates with an arbitrary and capricious standard. *See Doyle*, 542 F.3d at 1356; *see also Yochum v. Barnett Banks, Inc. Severance Pay Plan*, 234 F.3d 541, 544 (11th Cir. 2000) (per curiam); *Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1450 n.2 (11th Cir. 1997); *Jett,* 890 F.2d at 1139.

13

by making a denial that is arbitrary and capricious. *Id.* The first step in determining whether the administrator abused his discretion is to decide whether his denial was *de novo* wrong. *Id.; see Taylor v. Broadspire Servicing, Inc.*, No. 08-11639, 2008 WL 3864252, at *4 (11th Cir. Aug. 21, 2008) (per curiam) (noting that when the arbitrary and capricious standard applies, the court first determines whether the plan administrator's benefits decision was *de novo* wrong); *cf. White v. Coca-Cola Co.*, 542 F.3d 848, 855-57 (11th Cir. 2008) (finding that the plan administrator's benefits decision was wrong, but reasonable under the arbitrary and capricious standard); *see also McDaniel v. Hartford Life and Accident Ins. Co.*, No. 5:07-cv-7(CAR), 2008 WL 4426087, at *3 (M.D. Ga. Sept. 25, 2008 (recognizing that a court must first determine whether an administrator's decision is *de novo* wrong under the arbitrary and capricious standard). If the denial was *not* wrong, then it could not have been arbitrary and capricious, and thus the administrator did not abuse his discretion. If the denial was *de novo* wrong, then the Court must evaluate all of the relevant factors, including whether the administrator was operating under a conflict of interest, to determine whether the administrator's denial of benefits was arbitrary and capricious. If the administrator's decision was wrong but reasonable, taking into consideration all of the relevant factors, including any conflict of interest, then no abuse of discretion occurred and the denial must be upheld.

14

B.   The Policy's Discretionary Language

As discussed above, the Court must first determine whether Plaintiff's Policy provided Defendant with discretionary authority. In this case, the Policy provided, in pertinent part, that Defendant had the "discretionary authority to determine [an employee's] eligibility for benefits and to interpret the terms and provisions of the policy." (Admin. R. UACL:46.)   The Policy also provided that

> [i]n exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of [a policyholder's] claim by the Plan.   Benefits under this Plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them.

(*Id.* at UACL:72.)

It is clear from the Policy's language that Defendant had the "discretionary authority to determine eligibility for benefits [and] to construe the terms of the plan." *Firestone*, 489 U.S. at 115; *see Guy v. Se. Iron Workers' Welfare Fund*, 877 F.2d 37, 38-39 (11th Cir. 1989) (holding that the arbitrary and capricious standard was appropriate because the plan conferred upon the administrator "full and exclusive authority to determine all questions of coverage and eligibility" and "full power to construe the provisions of [the] Trust") (alteration in original) (internal quotation marks omitted); *see also Jett*, 890 F.2d at 1139 (holding that the arbitrary and capricious standard of review was applicable because the plan gave

15

the administrator "the exclusive right to interpret the provisions . . . so its decision [was] conclusive and binding"); *cf. Kirwan v. Marriott Corp.*, 10 F.3d 784, 788-89 (11th Cir. 1994) (holding that the language of the plan fell short of the express grant of discretionary authority because there was no grant of authority to construe the terms of the plan). Accordingly, Defendant's denial of benefits is entitled to deferential review and can only be overturned if the denial was arbitrary and capricious, thus constituting an abuse of discretion. To determine whether the denial was arbitrary and capricious, the Court must first examine *de novo* whether Defendant's benefits-denial decisions were wrong. *See Doyle*, 542 F.3d at 1356.

> **C.  Were the Denial Decisions *De Novo* Wrong?**

"A decision is 'wrong' if, after a review of the decision of the administrator from a *de novo* perspective, the court disagrees with the administrator's decision." *Glazer*, 524 F.3d at 1246 (internal quotation marks omitted). Thus, the Court "must consider, based on the record before the administrator at the time [the] decision was made, whether [it] would reach the same decision as the administrator." *Id.* at 1246-47.

In this case, the Court finds that Defendant's initial benefits-denial decision was not *de novo* wrong. Although Plaintiff's treating physician, Dr. Bowman, opined that Plaintiff lacked the capacity to perform "any work," Dr. Bowman failed to provide detailed physical

16

assessments supporting his conclusion. (*See, e.g.,* Admin. R. UACL:218-19, 407.) Furthermore, two physicians and one registered nurse determined that Plaintiff had the capacity to perform sedentary work. Specifically, both Dr. Tyler and Dr. Seiters, certified orthopedic surgeons, found that Plaintiff would be able to sit and perform sedentary work, confirming the conclusion of Karen Hughes, a registered nurse, that Dr. Bowman's opinion that Plaintiff lacked the ability to sit, stand, or walk was "completely overly restrictive." (*Id.* at UACL:384, 404-09, 436-46.) In addition, after Dr. Seiters received and reviewed the medical files from several of Plaintiff's doctors-Dr. Sen, Dr. Bucci, Dr. Reeves, and Dr. Shallcross-the determination was made that, notwithstanding the additional restriction and limitation of no repetitive bending or twisting, Plaintiff would still be able to perform sedentary work. (*Id.* at UACL:539-40, 557-60.)

The two thorough vocational assessments that were conducted further support the conclusion that Plaintiff could perform sedentary work. Lady Jackson, one of Defendant's senior vocational rehabilitation consultants, analyzed Plaintiff's prior work history, skills, high school education, training, and gainful wage, and determined that Plaintiff could perform at least three different occupations: wire transfer clerk, credit card clerk, and vehicle maintenance scheduler. (*Id.* at UACL:450-52.) Paulette Lemaire, another one of Defendant's senior vocational rehabilitation

17

consultants, performed an additional vocational assessment after noting Plaintiff's additional restriction and limitation of no repetitive stopping, bending, or twisting of the back. After thoroughly reviewing Plaintiff's medical files, Lemaire determined that the previous occupations suggested for Plaintiff "remain[ed] appropriate and gainful." (*Id.* at UACL:571.) Therefore, based on a thorough review of record, the Court finds that Defendant's initial benefits-denial decision was not wrong.

The Court also finds that Defendant's benefits-denial decision on appeal was not *de novo* wrong. After examining and noting Plaintiff's restrictions and limitations, Dr. Hill opined that although Plaintiff would be unable "to work at a job requiring lots of standing and walking," "[s]edentary work should be okay." (*Id.* at UACL:682.) Susan Grover, a registered nurse, reviewed all of Plaintiff's medical files, including the treatment files provided by Dr. Bucci, Dr. Shallcross, Dr. Reeves, Dr. Sen, and Dr. Bowman. Only after thoroughly reviewing the medical records did Grover determine that Plaintiff "should be able to perform sedentary work." (*Id.* at UACL:626-29.) Dr. Hoag opined, after considering Plaintiff's latest restrictions and limitations, that Plaintiff was capable of performing sedentary work. (*Id.* at UACL:664-68, 722-23, 760-61.) Even the third vocational assessment supported the conclusion that Plaintiff had the ability to perform sedentary work. Shannon O'Kelley, one of Defendant's senior vocational rehabilitation

18

consultants, opined that not only could Plaintiff still perform the three occupations originally noted, but that Plaintiff could perform three *additional* occupations notwithstanding her restrictions and limitations-telephone operator, telemarketer, and receptionist. (*Id.* at UACL:727.)  Therefore, the Court finds, upon *de novo* review of the record, that Defendant's benefits-denial decision on appeal was not wrong.[6]

Based on a determination that Defendant's benefits-denial decisions were not *de novo* wrong, Defendant's denial of benefits is affirmed.  However, even if Defendant's benefit-denial decisions were *de novo* wrong, the Court finds that they were nonetheless reasonable under the arbitrary and capricious standard.  As discussed in more detail below, the evidence in the record supports the conclusion that Defendant's denials were not arbitrary and capricious.

---

[6]In addition to contending that Defendant's benefits-denial decisions were erroneous, Plaintiff also claims that Defendant's determination that she suffered from a "recurrent disability" was erroneous.  (Pl.'s Mem. in Opp'n to Def.'s Mot. for J. on Admin. R. [hereinafter Pl.'s Opp'n] 5-6.) Specifically, Plaintiff contends that she *only* suffered from left knee problems during her first period of disability from September 2005 to June 2006, and therefore, the conditions she suffered from after she returned back to work in June 2006-shoulder pain as well as degeneration, bursitis, and fluid in both knees-were not conditions she ever suffered from before. The Court disagrees.  The record clearly indicates that Plaintiff suffered from bursitis and fluid in both knees, as well as shoulder pain, back in October 2005.  (*See, e.g.,* Admin. R. UACL:93.)  Plaintiff claimed in a telephone interview with Defendant in November 2005 that she had a history of knee and shoulder pain.  (*Id.* at UACL:30.)  Furthermore, in another telephone interview with Defendant, Plaintiff stated that she noticed in August 2006 that she was suffering from "the same problems that she had before." (*Id.* at UACL:299.)  Therefore, based on a review of Plaintiff's medical records and her *own* statements, the Court finds that the determination that Plaintiff suffered from a "recurrent disability" was not erroneous.

19

D.   Even if the Denials were "Wrong," they were not an Abuse of Discretion

Assuming *arguendo* that Defendant's benefits-denial decisions were *de novo* wrong, the Court finds that they were nonetheless reasonable. "In reviewing a termination of benefits under the arbitrary and capricious standard, the function of a reviewing court is to discern whether there was a reasonable basis for the decision, relying on the facts known to the administrator at the time the decision was made." *Buckley v. Metro. Life*, 115 F.3d 936, 941 (11th Cir. 1997) (per curiam). In other words, "[a]s long as a reasonable basis appears for [Defendant's] decision, it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision." *Jett*, 890 F.2d at 1140. Plaintiff contends that Defendant's benefits-denial decisions were arbitrary and capricious for several reasons: (1) the existence of a conflict of interest improperly influenced Defendant's exercise of discretion, (2) Defendant's medical consultants arbitrarily failed to credit the medical opinions of Plaintiff's treating physicians, and (3) Defendant's vocational consultants failed to take into account Plaintiff's education, training, and experience in determining which, if any, occupations Plaintiff would be able to perform.

In evaluating the reasonableness of Defendant's benefits-denial decisions, the Court notes that it must take into account whether Defendant was operating under a conflict of interest. Plaintiff contends that Defendant operated under a conflict of interest because

it was responsible for both determining eligibility and paying benefits under the Policy. (Pl.'s Opp'n 2.) The Court agrees. *See Townsend v. Delta Family-Care Disability & Survivorship Plan*, 295 F. App'x 971, 975 (11th Cir. 2008) (per curiam) (noting that in most cases a conflict of interest exists where the plan administrator determines eligibility for benefits and also pays those benefits out of its own assets); *see also Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1326 (11th Cir. 2001) (holding that a conflict of interest existed between defendant-administrator's fiduciary role and its profit making role because defendant-administrator paid out to beneficiaries from its own assets). Therefore, this conflict must be considered in determining whether Defendant abused its discretion. *See Glenn*, 128 S. Ct. at 2351 (noting that the degree and nature of the conflict should be analyzed to determine the extent to which it affected, if at all, a plan administrator's benefits decision); *see also Lee v. BellSouth Telecomms., Inc.*, No. 07-14901, 2009 WL 596006, at *6 (11th Cir. Mar. 10, 2009) (per curiam) (noting that district court should treat a conflict as a factor in considering whether an administrator's benefits decision was arbitrary and capricious); *Creel v. Wachovia Corp.*, No. 08-10961, 2009 WL 179584, at *6 (11th Cir. Jan. 27, 2009) (same).

The Court finds that there is nothing in the totality of the circumstances that indicates that Defendant's conflict of interest was a major factor in its decision. Defendant investigated the case

21

thoroughly and developed a complete and thorough record.  Although Defendant used in-house consultants to review Plaintiff's file instead of employing outside medical consultants, there is no evidence in the record to indicate that Defendant's consultants reviewed the file in an unfair or biased manner.  Reliance upon in-house medical consultants who base their evaluations on a review of medical and vocational records is not, standing alone, an abuse of discretion.  *See, e.g., Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006) ("The singular fact of working in-house does not disqualify a doctor from rendering an independent opinion any more than does paying an outside doctor to do the same [.]") *Hufford v. Harris Corp.*, 322 F. Supp. 2d 1345, 1359 (M.D. Fla. 2004) ("It is entirely appropriate for an administrator to rely on written reports of consultants who have done paper reviews of a claimant's medical records, even if those reports rebut the opinion of the treating physicians asserting claimant is disabled.").  In addition, Plaintiff has failed to point the Court to any evidence in the record to suggest that Defendant had a history of biased claims administration.  *See Glenn*, 128 S. Ct. at 2351 ("The conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration.").  Therefore, the Court finds that the existence of

22

a conflict did not improperly influence Defendant's exercise of discretion.

Plaintiff also contends that Defendant abused its discretion by arbitrarily refusing to credit the medical opinions of Plaintiff's treating physician. (Pl.'s Opp'n 8.) The Court rejects Plaintiff's contention. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician[.]"). Although Dr. Bowman did opine that Plaintiff lacked the capacity to perform any work, Dr. Bowman failed to provide detailed physical assessments supporting this conclusion. Furthermore, Plaintiff's consulting physician, Dr. Hill, concluded that Plaintiff had the capacity to perform sedentary work, notwithstanding Plaintiff's present restrictions and limitations. Based on a review of the record, it is clear that Defendant acknowledged Dr. Bowman's medical opinions in making its determinations. While Dr. Bowman believed that Plaintiff was unable to work, it was not an abuse of discretion for Defendant to credit the opinion of Dr. Hill, along with the other medical and vocational evidence, over the opinion of Dr. Bowman. Therefore, the Court finds that Defendant did not arbitrarily fail to credit the medical opinions of Plaintiff's treating physician.

23

Plaintiff next contends that Defendant's vocational consultants failed to take into account Plaintiff's education, training, or experience in determining whether she was capable of performing any "gainful occupation." (Pl.'s Opp'n 7.) This contention is not supported by the record. All three of Defendant's vocational consultants not only reviewed Plaintiff's medical records, but also took into account Plaintiff's high school education, her gainful wage of $8.14 per hour, her previous work experience as a material control clerk and production foreman, her reasoning, mathematical, and language development levels, and her geographic location, in determining which, if any, occupations were suitable for Plaintiff given her present restrictions and limitations. (*See, e.g.,* Admin. R. at UACL:450-52, 570-71, 724-28.)

Based on the foregoing, the Court finds that Defendant did not abuse its discretion in making its benefits-denial decisions. Therefore, even if Defendant's denials were determined to be *de novo* wrong, those denials nevertheless must be affirmed.

CONCLUSION

For the reasons stated above, the Court finds that Defendant's initial benefits-denial decision and its benefits-denial decision on appeal were not *de novo* wrong. Furthermore, even if they were, they were nonetheless reasonable. Therefore, Defendant's Motion for Judgment on the Administrative Record (Doc. 11) is granted.

Accordingly, Plaintiff shall recover nothing from Defendant, and judgment shall be entered in favor of Defendant.[7]

        IT IS SO ORDERED, this 30th day of March, 2009.


                                    S/Clay D. Land
                                      CLAY D. LAND
                                    UNITED STATES DISTRICT JUDGE

---

    [7]In light of the Court's ruling in favor of Defendant, Plaintiff's motion for attorney fees under 29 U.S.C. § 1132(g)(1) is denied.